**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| 1. ALLEGIANT MARKETING GROUP, INC.<br>an Oklahoma corporation<br><br>Plaintiff,<br><br>v.<br><br>2. DIRECT INNOVATIONS, LLC, a Texas<br>limited liability company,<br><br>3. STRIKE MARKETING, LLC, a Texas<br>limited liability company,<br><br>4. McCARTHY COMPANIES, INC., a Texas<br>corporation,<br><br>and<br><br>5.  AMBERLY ALLEN, an individual,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>) Case No.  CIV-15-40-D<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiff, Allegiant Marketing Group, Inc. ("Allegiant"), for its causes of action against Direct Innovations, LLC ("Direct Innovations"), Strike Marketing, LLC, ("Strike Marketing"), McCarthy Companies, Inc. ("McCarthy"), and Amber Allen ("Allen") (collectively, "Defendants"), alleges and states as follows:

## NATURE OF COMPLAINT

1.      This is an action for injunctive relief and monetary damages arising out of Defendants' breach of contract, copyright infringement, trademark infringement, unfair competition, unjust enrichment, misappropriation of trade secrets, unfair competition, use

of counterfeit marks, and deceptive trade practices in violation of the Lanham Act, Copyright Act, and the statutory and common law of the State of Oklahoma.

## PARTIES

2.     Allegiant is an Oklahoma corporation having a principal place of business at 13930 North Harvey Avenue, Edmond, Oklahoma 73013.

3.     Upon information and belief, Direct Innovations is a Texas limited liability company having a principal place of business in Bellaire, Texas.

4.     Upon information and belief, Strike Marketing is a Texas limited liability company having a principal place of business in Dallas, Texas

5.     Upon information and belief, McCarthy is a Texas corporation having a principal place of business in Dallas, Texas.

6.     Upon information and belief, Allen is an individual residing in Dallas, Texas.

## JURISDICTION AND VENUE

7.     This is an action arising in part under the laws of the United States, specifically, the Copyright Act of 1976, 17 U.S.C. § 101 *et seq*., as well as Section 43 of the Lanham Act, 15 U.S.C. § 1125

8.     The Court has original jurisdiction over Allegiant's copyright and trademark infringement claims pursuant to 28 U.S.C. §§ 1331 and 1338.

9.     Jurisdiction as to all other causes of action is proper pursuant to 28 U.S.C. § 1367 because, as set forth below, the causes of action are so related that they form a part of the same case or controversy.

10.     Federal jurisdiction also exists under 28 U.S.C. § 1332(a)(1), as this is a civil action where the matter in controversy exceeds the sum or value of Seventy Five Thousand Dollars ($75,000), exclusive of interest and costs, and is between citizens of different States.   Specifically, at all times from the filing of this action through and including the present: (1) Allegiant is a corporation organized and existing under the laws of the State of Oklahoma with its principal place of business in Oklahoma with officers who have been primarily located in Oklahoma and which direct, control, and coordinate Allegiant's activities primarily from its headquarters in Oklahoma; (2) upon information and belief, Defendants Direct Innovations, Strike Marketing and McCarthy are entities organized and existing under the laws of the State of Texas with their respective principal places of business in Texas, and which respectively have officers who have been primarily located in Texas and which direct, control, and coordinate their respective activities primarily from headquarters in Texas; and (3) upon information and belief, Allen is a resident of Texas.   Allegiant is, therefore, considered a citizen of the State of Oklahoma, and not any other State, including Texas, for purposes of diversity jurisdiction under 28 U.S.C. § 1332(c)(1), and Defendants are, therefore, considered citizens of the State of Texas, not Oklahoma, for purposes of diversity jurisdiction under 28 U.S.C. § 1332(c)(1).

11.     Venue is proper in the Western District of Oklahoma pursuant to 28 U.S.C. §§ 1391 and 1400 because a substantial part of the events or omissions giving rise to the present claims occurred in this District, and Defendants are subject to personal jurisdiction in this District.   Venue over supplemental or pendent causes of action is

additionally proper under the pendent venue doctrine because, as set forth below, such

pendent claims arise under a common nucleus of facts as those claims not based on

pendent jurisdiction.

12.     Personal jurisdiction is proper over Defendants because, as alleged below,

Defendants' have minimum contacts with the State of Oklahoma sufficient for specific

jurisdiction or, alternatively, upon information and belief, have continuous and

systematic contact with the forum sufficient for general jurisdiction.

## BACKGROUND

### I.     Allegiant and the Allegiant Programs, Marks and Mailers.

13.     Allegiant provides a variety of services and products related to advertising,

with a focus on advertising products and services for automobile dealerships.

14.     As part of is business, Allegiant develops and manages miscellaneous

marketing programs whereby promotional materials are distributed to consumers on

behalf of Allegiant's clients advertising the clients' respective products and services.

15.     A direct mailer program created and owned by Allegiant is named

"Mystery Mania," under which prospective customers receive discount vouchers and

prize certificates aimed at driving additional business to Allegiant's clients' locations (the

"Mystery Mania Program").

16.     Allegiant developed the Mystery Mania Program in 2008, together with

several proprietary mailers used in connection with the program (the "Mystery Mania

Mailers").

17.     Allegiant is the owner of all rights in and to the Mystery Mania Mailers, and is the owner of Copyright Registration No. TX0007287862 (the "'862 Registration"), which is directed to the Mystery Mania Mailers.

18.     A true and correct copy of the '862 Registration is attached hereto as Exhibit 1 and incorporated herein.

19.     The '862 Registration is *prima facie* evidence of the validity of Allegiant's rights in and to the Mystery Mania Mailers.

20.     Federal law prohibits the use, reproduction and exploitation of the copyright protected by the '862 Registration without Allegiant's consent, regardless of whether such unpermitted use, reproduction and exploitation is intentional.

21.     Allegiant is also the common law owner of the MYSTERY MANIA service mark, and has used or permitted use of that mark in connection with advertising services since at least as early as May 20, 2008 (the "MYSTERY MANIA Mark").

22.     Allegiant has used and/or permitted the use of the MYSTERY MANIA Mark throughout the United States, including the State of Texas.

23.     Due to the widespread and extensive use of the MYSTERY MANIA Mark, strict control over the nature and quality of the services provided, extensive advertising and promotions activities and substantial sales as a result thereof, Allegiant has built up an excellent reputation and valuable goodwill in the MYSTERY MANIA Mark, which has been established in the minds of consumers as designating Allegiant as the source of the services and products provided therewith.

24.    As part of its business, Allegiant owns and maintains a database of names and contact information of individuals and entities in the automotive industry, which Allegiant has acquired over the year its has conducted business, and which Allegiant uses to disseminate marketing and promotional materials for itself and on behalf of its clients (the "Customer Database").

25.    Allegiant has invested valuable time and resources to collect and aggregate the information in the Customer Database, which affords Allegiant with a competitive advantage due to the quantity and accuracy of the contact information therein and the ease with which it may be used in connection with marketing promotions.

26.    Allegiant's marketing programs, marketing pieces service marks  and Customer Database constitute protectable property owned by and/or licensed to Allegiant.

**II.    Allegiant and Direct Innovations.**

27.    Direct Innovations is an advertising company that provides, *inter alia,* products and services directed to direct mail advertising on behalf of automobile dealerships.

28.    Upon information and belief, Allen is the founder, sole manager, and sole member of Direct Innovations.

29.    In 2011, Allen contacted Allegiant because Allegiant had developed proprietary marketing materials for vehicle dealerships.

30.    Allegiant subsequently provided Allen and Direct Innovations access to the Customer Database, with the understanding that the Customer Database was Allegiant's

proprietary and confidential information and Allen/Direct Innovations were to only use the Customer Database in connection with business with Allegiant and to otherwise maintain the Customer Database as confidential.

31.     On or about December 5, 2011, Allegiant and Direct Innovations entered into a Licensing Agreement for Direct Mail Piece (the "License Agreement"), under which Allegiant granted Direct Innovations a license to use, *inter alia,* various Allegiant marketing programs and corresponding materials, including the Mystery Mania Program and Mystery Mania Mailers.

32.     Allen executed the License Agreement on behalf of Direct Innovations.

33.     The License Agreement prohibits Direct Innovations from using the licensed materials outside of their specific assigned market areas and further prohibits Direct Innovations from assigning or otherwise transferring rights or materials subject to the License Agreement to any another entity.

34.     In November of 2013, the parties terminated their business relationship and agreements.

**III.     Direct Innovations, Strike Marketing, and McCarthy.**

35.     McCarthy is an advertising agency which focuses on providing products and services to automobile dealerships.

36.     Upon information and belief, Direct Innovations was acquired, in whole or in part, by McCarthy in 2014.

37.     Upon information and belief, Direct Innovations is now known as Strike Marketing, and continues to offer advertising services similar to or identical with those offered by Direct Innovations.

38.     Upon information and belief, after Direct Innovations was acquired by McCarthy, McCarthy appointed Allen as the Director of Sales for Strike Marketing and she continues to operate in that capacity today.

39.     Upon information and belief, Allen owns the domain <<<dimarketing.net>>>, with which Allen continues offer advertising services under the trade name Direct Innovations, but which services are ultimately provided by Strike Marketing (the "Direct Innovations Site").

40.     Notwithstanding the termination of the License Agreement, Strike Marketing advertises Allegiant's marketing programs on the Direct Innovations Site using, *inter alia,* the MYSTERY MANIA Mark as well as images of the Mystery Mania Mailers without Allegiant's consent.

41.     True and correct image of the Direct Innovations Site showing such unlawful use are attached hereto as Exhibit 2 and incorporated herein.

42.     Upon information and belief, McCarthy owns the domain <<<strikemarketing.com>>> and operates a website located at that domain which advertises Strike Marketing's services (the "Strike Marketing Site").

43.     The Strike Marketing Site and Direct Innovations Site are collectively referred to as "Defendants Sites."

44.     Upon information and belief, McCarthy controls, or has the right and ability to control, the activities of Direct Innovations and Strike Marketing as well as the content on Defendant's Sites.

45.     Strike Marketing advertises Allegiant's marketing programs on the Strike Marketing Site using, *inter alia,* the MYSTERY MANIA Mark as well as images of the Mystery Mania Mailers without Allegiant's consent.

46.     True and correct images of the Strike Marketing Site showing such unlawful use are attached hereto as Exhibit 3 and incorporated herein.

47.     Mailers advertised on Defendants' Sites under the name "Mystery Mania" are identical or substantially similar to the Mystery Mania Mailers that are the subject of the '862 Registration.

48.     Upon information and belief, Strike Marketing gained access to Allegiant's proprietary information and intellectual property from Allen, who had access to the same by virtue of the License Agreement.

49.     Upon information and belief, Defendants' Sites are viewable to IP addresses throughout the United States, including the State of Oklahoma and this District.

50.     Upon information and belief, Strike Marketing is advertising for sale, selling, distributing and/or otherwise causing the distribution of mailers identical or substantially similar to the Mystery Mania Mailers throughout the United States and/or, at a minimum, into and throughout the State of Oklahoma and this District.

51.     Upon information and belief, Strike Marketing is advertising for sale, selling, distributing and/or otherwise causing the distribution of mailers under the

MYSTERY MANIA Mark throughout the United States and/or, at a minimum, into and throughout the State of Oklahoma and this District.

52.     Upon information and belief, Allen provided the Customer Database to Strike Marketing and/or McCarthy, and Defendants have used the Customer Database without Allegiant's consent to distribute marketing and promotional materials in direct competition with Allegiant throughout the United States and/or, at a minimum, into and throughout the State of Oklahoma and this District.

53.     Upon information and belief, Allen has wrongfully maintained possession of the Customer Database after her business relationship with Allegiant ended, and has used the Customer Database without Allegiant's consent to advertise and promote services in competition with Allegiant.

54.     Upon information and belief, all or part of the sale price provided by McCarthy in the acquisition of Direct Innovations represented Allegiant's proprietary materials and intellectual property which Direct Innovations and/or Allen have unlawfully used and maintained, including, without limitation, Allegiant's marketing materials, programs, the MYSTERY MANIA Mark, the Customer Database, and the Mystery Mania Mailers.

55.     Upon information and belief, McCarthy and Allen were each respectively aware that the Mystery Mania Mailers, MYSTERY MANIA Mark, and/or Allegiant's marketing programs were being advertised, offered for sale, and/or otherwise displayed on the Defendants' Sites.

56.     Allegiant has not consented to the aforementioned use by Defendants of Allegiant's intellectual property and proprietary materials.

57.     Defendants' have committed the aforementioned unlawful acts to unlawfully and unfairly compete with Allegiant to Allegiant's detriment.

## COUNT I
## DIRECT COPYRIGHT INFRINGEMENT
### (Strike Marketing)

58.     Allegiant re-alleges and incorporates by reference the allegations contained in each preceding paragraph.

59.     Strike Marketing has wrongfully infringed Allegiant's copyright that is the subject of the '862 Registration by copying, reproducing, distributing, publicly displaying and/or making derivative works of the same without Allegiant's consent.

60.     Strike Marketing's infringing acts include, *inter alia,* unauthorized duplication of Allegiant's copyright on the Strike Marketing Site and, upon information and belief, distributing marketing mailers which are substantially similar to and infringe Allegiant's copyright without Allegiant's consent.

61.     Upon information and belief, Strike Marketing's aforementioned acts of infringement are and were willful.

62.     By reason of Strike Marketing's copyright infringement and threatened copyright infringement, Allegiant has sustained and will continue to sustain substantial injury, loss, and damage to its rights in its copyrighted work(s).

63.     Allegiant is entitled to recover from Strike Marketing the damages sustained by Allegiant as a result of Strike Marketing's acts of copyright infringement in

an amount to be proven at trial.   Allegiant is further entitled to recover from Strike Marketing gains, profits, and advantages Strike Marketing has obtained as a result of its acts of copyright infringement in an amount to be proven at trial.

64.   In the alternative, Allegiant is entitled to recover from Strike Marketing statutory damages under 17 U.S.C. § 504 up to One Hundred Fifty Thousand Dollars ($150,000) per work infringed, or such other amount the Court deems just and equitable.

65.   The aforementioned damages to which Allegiant is entitled are in excess of Seventy-Five Thousand Dollars ($75,000) together with interest, costs, and attorneys' fees.

66.   Further irreparable harm to Allegiant is imminent as a result of Strike Marketing's conduct, Allegiant is, therefore, entitled to an injunction restraining Strike Marketing and its respective officers, directors, agents, employees, representatives, and other persons acting in concert with it from engaging in further such acts of copyright infringement.

## COUNT II
## DIRECT COPYRIGHT INFRINGEMENT
### (Direct Innovations)

67.   Allegiant re-alleges and incorporates by reference the allegations contained in each preceding paragraph.

68.   Upon information and belief, Direct Innovations provided the Mystery Mania Mailers that are the subject of the '862 Registration to Strike Marketing without Allegiant's consent and in violation of the License Agreement.

69.     Direct    Innovations'    unpermitted    transfer    constitutes    copyright infringement.

70.     Upon information and belief, Direct Innovation's aforementioned acts of infringement are and were willful.

71.     By reason of Direct Innovation's copyright infringement and threatened copyright infringement, Allegiant has sustained and will continue to sustain substantial injury, loss, and damage to its rights in its copyrighted work(s).

72.     Allegiant is entitled to recover from Direct Innovations the damages sustained by Allegiant as a result of Direct Innovation's acts of copyright infringement in an amount to be proven at trial.  Allegiant is further entitled to recover from Direct Innovations gains, profits, and advantages Direct Innovations has obtained as a result of its acts of copyright infringement in an amount to be proven at trial.

73.     In the alternative, Allegiant is entitled to recover from Direct Innovations statutory damages under 17 U.S.C. § 504 up to One Hundred Fifty Thousand Dollars ($150,000) per work infringed, or such other amount the Court deems just and equitable.

74.     The aforementioned damages to which Allegiant is entitled are in excess of Seventy-Five Thousand Dollars ($75,000) together with interest, costs, and attorneys' fees.

75.     Further irreparable harm to Allegiant is imminent as a result of Direct Innovation's conduct, Allegiant is, therefore, entitled to an injunction restraining Direct Innovations and its respective officers, directors, agents, employees, representatives, and

other persons acting in concert with it from engaging in further such acts of copyright infringement.

**COUNT III**
**COPYRIGHT INFRINGEMENT - DIRECT, CONTRIBUTORY, AND VICARIOUS LIABILITY**
**(Allen)**

76.     Allegiant re-alleges and incorporates by reference the allegations contained in each preceding paragraph.

77.     Upon information and belief, Allen personally provided the Mystery Mania Mailers to Strike Marketing and/or McCarthy, caused the same to be replicated and reproduced on Defendants' Sites and/or in various mailers distributed by Strike Marketing, and/or otherwise personally participated in Strike Marketing's infringement of Allegiant's copyright.

78.     Allen is individually liable for Strike Marketing's acts of direct copyright infringement.

79.     Upon information and belief, Allen personally provided the Mystery Mania Mailers to Strike Marketing in contravention of the License Agreement and/or otherwise personally participated in Direct Innovations' infringement of Allegiant's copyright.

80.     Allen is individually liable for Direct Innovations' acts of direct copyright infringement.

81.     Upon information and belief, Allen had knowledge of Strike Marketing's aforementioned acts of infringement and made material contributions to such acts, including, without limitation, providing the Mystery Mania Mailers to Strike Marketing

and/or causing the same to be replicated and reproduced on Defendants' Site and/or in various mailers distributed by Strike Marketing.

82.     Allen is contributorily liable for Strike Marketing's acts of copyright infringement

83.     Upon information and belief, Allen had knowledge of Direct Innovation's acts of infringement and made material contributions to such acts, including, without limitation, providing the Mystery Mania Mailers to Strike Marketing in violation of the License Agreement.

84.     Allen is contributorily liable for Direct Innovations' acts of copyright infringement

85.     Upon information and belief, Allen, in her respective capacities as an officer and owner of Strike Marketing and Direct Innovations, had the right and ability to supervise the infringing activity mentioned herein as well as a direct financial interest in the same.

86.     Allen is vicariously liable for Strike Marketing and Direct Innovation's acts of copyright infringement.

87.     By reason of Allen's copyright infringement and threatened copyright infringement, Allegiant has sustained and will continue to sustain substantial injury, loss, and damage to its ownership rights in its copyrighted work(s).

88.     Upon information and belief, Allen's aforementioned acts of infringement are and were willful.

89.     Allegiant is entitled to recover from Allen the damages sustained by Allegiant as a result of Allen's acts of copyright infringement in an amount to be proven at trial.  Allegiant is further entitled to recover from Allen gains, profits, and advantages Allen has obtained as a result of her acts of copyright infringement in an amount to be proven at trial.

90.     In the alternative, Allegiant is entitled to recover from Allen statutory damages under 17 U.S.C. § 504 up to One Hundred Fifty Thousand Dollars ($150,000) per work infringed directly, contributorily, and vicariously, or such other amount the Court deems just and equitable.

91.     The aforementioned damages to which Allegiant is entitled are in excess of Seventy-Five Thousand Dollars ($75,000) together with interest, costs, and attorneys' fees.

92.     Further irreparable harm to Allegiant is imminent as a result of Allen's conduct, Allegiant is, therefore, entitled to an injunction restraining Allen and persons acting in concert with her from engaging in further such acts of copyright infringement.

**COUNT IV**
**COPYRIGHT INFRINGEMENT – VICARIOUS LIABILITY**
**(McCarthy)**

93.     Allegiant re-alleges and incorporates by reference the allegations contained in each preceding paragraph.

94.     Upon information and belief, McCarthy owns, in whole or in part, Strike Marketing which was formally known as Direct Innovations.

16

95.     Upon information and believe, as the owner of the Strike Marketing Site, McCarthy has the right and ability to supervise and control the content thereon as well as a direct financial interest in the advertising and activities on the Strike Marketing Site, including the acts of infringement mentioned herein.

96.     Upon information and belief, as an owner of Strike Marketing, McCarthy has the right and ability to supervise Strike Marketing's activities, including the aforementioned acts of infringement.

97.     Upon information and belief, McCarthy has a direct financial interest in the aforementioned acts of infringement as a result of, *inter alia,* increased profitability of Strike Marketing thereby increasing McCarthy's interest therein.

98.     McCarthy is vicariously liable for Strike Marketing's acts of copyright infringement.

99.     Upon information and belief, McCarthy is Allen's principal with respect to Allen's actions in connection with Strike Marketing and, as such, had the right and ability to supervise Allen's aforementioned acts of infringement as well as a direct financial interest in the same as a result of, *inter alia,* increased profitability of Strike Marketing increasing McCarthy's interest therein.

100.    McCarthy is vicariously liable for Allen's acts of copyright infringement.

101.    As a result, Allegiant is entitled to recover from McCarthy the damages sustained by Allegiant as a result of  Strike Marketing and Allen's acts of copyright infringement in an amount to be proven at trial.  Allegiant is further entitled to recover

from McCarthy gains, profits, and advantages Allen and Strike Marketing have obtained as a result of their acts of copyright infringement in an amount to be proven at trial.

102.   In the alternative, Allegiant is entitled to recover from McCarthy statutory damages under 17 U.S.C. § 504 up to One Hundred Fifty Thousand Dollars ($150,000) per work infringed, or such other amount the Court deems just and equitable..

103.   The aforementioned damages to which Allegiant is entitled are in excess of Seventy-Five Thousand Dollars ($75,000) together with interest, costs, and attorneys' fees.

<u>COUNT V</u>
<u>UNFAIR COMPETITION/ FALSE ADVERTISING/</u>
<u>FALSE DESIGNATION OF ORIGIN</u>
**(All Defendants)**

104.   Allegiant re-alleges and incorporates by reference the allegations contained in each preceding paragraph.

105.   The MYSTERY MANIA Mark is a valid, protectable service mark owned by Allegiant and to which Allegiant has rights in numerous states due to use of the same, including, without limitation, the States of Oklahoma and Texas.

106.   Without Allegiant's consent, Strike Marketing has used and continues to use the MYSTERY MANIA Mark in connection with Strike Marketing's advertising services.

107.   Without Allegiant's consent, Direct Innovations has used and continues to use the MYSTERY MANIA Mark in connection with Strike Marketing's advertising services.

108.   The unpermitted use of the MYSTERY MANIA Mark by Strike Marketing and/or Direct Innovations occurred and continues to occur throughout the United States and/or, at a minimum, within the State of Oklahoma and this District.

109.   Strike Marketing and/or Direct Innovations' use of the MYSTERY MANIA Mark infringes the same and is likely to cause confusion, or to cause mistake, or to deceive as to the source, origin and sponsorship of Strike Marketing and its services.

110.   The unpermitted use of the MYSTERY MANIA Mark by Strike Marketing and/or Direct Innovations falsely conveys that one or both of those entities has the right to use Allegiant's marketing programs or is otherwise affiliated and/or associated with Allegiant.

111.   Strike Marketing and/or Direct Innovations' unpermitted use of the MYSTERY MANIA Mark passes the goods and services of those entities off as if they were Allegiant's and otherwise unlawfully trades on the goodwill associated with the Allegiant Marks.

112.   The foregoing acts of Strike Marketing constitute a violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

113.   Upon information and belief, Allen personally participated in and/or specifically directed the infringing use of the MYSTERY MANIA Mark by Strike Marketing and is, therefore, individually liable for the same.

114.   Upon information and belief, McCarthy exercised ownership and/or control over Strike Marketing and Allen's infringing conduct, was Strike Marketing and/or Allen's principal with regard to such activities, and/or had a direct financial interest in the

19

infringement of the MYSTERY MANIA Mark, and is, therefore, vicariously liable for the same.

115.    As a result of the infringement of the MYSTERY MANIA Mark, Allegiant has been and will continue to be damaged, including monetary damages in an amount to be proven at trial.

116.    Allegiant will suffer irreparable harm should infringement of the MYSTERY MANIA Mark be allowed to continue to the detriment of Allegiant's reputation and goodwill, and Allegiant's remedy at law is not by itself adequate to compensate for the injuries inflicted and threatened by infringement of the MYSTERY MANIA Mark.  Allegiant is, therefore, entitled to an injunction restraining Defendants and persons acting in concert with Defendants from engaging in further such acts of trademark infringement.

117.    The foregoing acts of infringement are and were in bad faith, willful and in conscious or reckless disregard for Allegiant's rights such that this is an exceptional case for which Allegiant is entitled to treble damages and attorneys' fees in accordance with 15 U.S.C. § 1117.

**COUNT VI**
**DECEPTIVE TRADE PRACTICES**
**(All Defendants)**

118.    Allegiant re-alleges and incorporates by reference the allegations contained in each preceding paragraph.

119.    The aforementioned acts constitute unlawful attempts to pass off Allegiant's products and services as Defendants'.

120.   Upon information and belief, Allen knew of, personally participated in, specifically directed, and/or had a direct financial interest in the unlawful passing off.

121.   Upon information and belief, McCarthy knew of, participated in, controlled, and/or had a direct financial interest in the unlawful passing off.

122.   The aforementioned conduct constitutes one or more deceptive trade practices in violation of the Oklahoma Deceptive Trade Practice Act, 78 Okla. Stat. § 51 *et seq*.

123.   By reason of the aforementioned deceptive trade practices, Allegiant has sustained and will continue to sustain substantial injury, loss, and damage.

124.   Allegiant is entitled to recover those damages sustained by Allegiant as a result of the deceptive trade practices in an amount to be proven at trial.  Allegiant is further entitled to recover those gains, profits, and advantages Defendants have obtained as a result of their deceptive trade practices in an amount to be proven at trial.

125.   Defendants' deceptive trade practices constitute *prima facie* evidence of Defendants' intent to injure competitors and to destroy or substantially lessen competition, thereby, violating Oklahoma's Antitrust Reform Act, 79 Okla. Stat. § 201 *et seq*., entitling Allegiant to treble damages.

126.   The aforementioned damages to which Allegiant is entitled are in excess of Seventy-Five Thousand Dollars ($75,000) together with interest, costs, and attorneys' fees.

127.    Defendants' actions were malicious, wanton, reckless, willful, oppressive, and done with intent to injure Allegiant and its business, thereby entitling Allegiant to punitive damages in an amount to be determined at trial.

128.    Further irreparable harm to Allegiant is imminent as a result of Defendants' conduct; Allegiant is, therefore, entitled to an injunction restraining Defendants, their respective officers, directors, agents, employees, representatives, and all persons acting in concert with them from engaging in further deceptive trade practices.

## COUNT VII
## COUNTERFEIT TRADEMARK
### (All Defendants)

129.    Allegiant re-alleges and incorporates by reference the allegations contained in each preceding paragraph.

130.    The MYSTERY MANIA Mark constitutes protectable intellectual property under Oklahoma's Trademark Anti-Counterfeiting Act, 21 Okla. Stat. § 1990 *et seq.*

131.    Defendants' aforementioned unpermitted use, reproduction and copying of Allegiant's intellectual property constitutes use of counterfeit marks in violation of Oklahoma's Trademark Anti-Counterfeiting Act.

132.    Defendants' aforementioned acts have caused and will cause Allegiant to sustain substantial injury, loss, and damage.

133.    As a result, Allegiant is entitled to its actual damages caused by Defendants' violation of Oklahoma's Trademark Anti-Counterfeiting Act in an amount to be proven at trial, treble damages, the costs of suit, and an award of its attorney fees.

## COUNT VIII
## BREACH OF CONTRACT
### (Direct Innovations, Strike Marketing)

134.    Allegiant re-alleges and incorporates by reference the allegations contained in each preceding paragraph.

135.    The License Agreement is a valid, enforceable contract between Direct Innovations and Allegiant.

136.    Direct Innovations breached the Agreement by, *inter alia*: (1) transferring Allegiant's proprietary materials to Strike Marketing without authorization from Allegiant; (2) continuing to use Allegiant's proprietary materials and advertising the sale of the Allegiant programs after termination of the License Agreement without Allegiant's consent; (3) exceeding the scope of its license from Allegiant by causing marketing materials subject to the License Agreement to be distributed beyond the geographic territory licensed and permitted by Allegiant; and (4) passing off Allegiant's goods and services as its own.

137.    The foregoing actions represent material breaches of the Agreement.

138.    Allegiant has performed all conditions precedent under the Agreement and has not excused Direct Innovations' breaches.

139.    Upon information and belief, Strike Marketing is Direct Innovations' successor-in-interest and, therefore, liable for the breach committed by Direct Innovations.

140.     Allegiant has suffered damages as a result of Direct Innovations' breaches and is entitled to recover from Direct Innovations a monetary amount to be determined at trial.

141.     The aforementioned damages to which Allegiant is entitled are in excess of Seventy-Five Thousand Dollars ($75,000) together with interest, costs, and attorneys' fees.

142.     Some or all of Direct Innovations' breaches have or will cause irreparable harm, thus, Allegiant is entitled to specific performance of the Agreement, restraining Direct Innovations, its members, officers, managers, directors, agents, employees, representatives, and all persons acting in concert with them from engaging in further such acts of breach.

**COUNT IX**
**MISAPPROPRIATION OF TRADE SECRETS**
**(All Defendants)**

143.     Allegiant re-alleges and incorporates by reference the allegations contained in each preceding paragraph.

144.     Allegiant has invested valuable time and resources to collect and aggregate the information in the Customer Database.

145.     Due to, *inter alia,* the quantity and accuracy of contact information in the Customer Database, the Customer Database affords Allegiant with a competitive advantage.

146.     Allegiant takes great efforts to maintain the secrecy of the Customer Database by, *inter alia,* prohibiting access to the Customer Database to only those

individuals who have a need-to-know the same, maintaining the Customer Database on a password-protected computer system, securing its computer systems to restrict against access from unauthorized users, and disclosing it under agreements to maintain the confidentiality of the same.

147. Allegiant disclosed the Customer Database to Allen and/or Direct Innovations with the understanding and agreement that the Customer Database constituted Allegiant's confidential, proprietary property and that Allen/Direct Innovations were to maintain the Customer Database as confidential and only use the Customer Database in connection their relationship with Allegiant.

148. Upon information and belief, Allen and/or Direct Innovations continued to use the Customer Database after their relationship with Allegiant ended without Allegiant's consent.

149. Upon information and belief, Allen and/or Direct Innovations provided the Customer Database to Strike Marketing and/or McCarthy without Allegiant's consent and despite her obligations to maintain confidentiality of the same.

150. Upon information and belief, McCarthy induced Allen to provide the Customer Database to Strike Marketing and/or McCarthy despite her obligations to maintain confidentiality of the same.

151. Upon information and belief, Defendants have used the Customer Database to distribute or cause the distribution of marketing materials in competition with Allegiant and without Allegiant's consent.

152.    Defendants have wrongfully acquired and used Allegiant's Customer Database to sell and market their own products and services in direct competition with Allegiant.

153.    Defendants' foregoing acts constitute misappropriation of Allegiant's trade secrets in violation of Oklahoma's Uniform Trade Secret Act, 78 Okla. Stat. § 85 *et seq.*, for which Allegiant is entitled to monetary damages, including compensation for Allegiant's actual loss, the imposition of a reasonable royalty, as well as any and all any ill-gotten gains Defendants received as a result of their misappropriation.

154.    Defendants' actions were malicious, wanton, reckless, willful, oppressive, and done with intent to injure Allegiant and its business, thereby entitling Allegiant to punitive damages in an amount to be determined at trial.

155.    Allegiant's malicious and willful actions further entitle Allegiant to an award of its reasonable attorneys' fees.

**COUNT X**
**UNJUST ENRICHMENT**
**(All Defendants)**

156.    Allegiant re-alleges and incorporates by reference the allegations contained in each preceding paragraph.

157.    Defendants have gained substantial benefit from wrongfully using Allegiant's proprietary materials, programs, service marks and information without Allegiant's consent.

158.    Defendants' actions as described above constitute unjust enrichment in violation of Oklahoma common law.

159.    Under the circumstances, it would be inequitable for Defendants to retain that benefit conferred without paying for the same.

160.    As a result, Allegiant is entitled to recover from Defendants the reasonable value of the benefits derived by Defendants for their wrongful conduct in an amount to be proven at trial.

161.    The aforementioned damages to which Allegiant is entitled are in excess of Seventy-Five Thousand Dollars ($75,000) together with interest, costs, and attorneys' fees.

162.    Defendants' actions were malicious, wanton, reckless, willful, oppressive, and done with intent to injure Allegiant and its business, thereby entitling Allegiant to punitive damages in an amount to be determined at trial.

163.    Defendants should not be allowed to continue using wrongfully acquired proprietary materials and intellectual property of Allegiants', consequently, Allegiant is entitled to an injunction restraining Defendants from future sales and use of any Direct Innovations product which incorporates, in whole or in part, or arises out of use of Allegiant's proprietary materials.

## COUNT XI
## UNFAIR COMPETITION

164.    Allegiant re-alleges and incorporates by reference the allegations contained in each preceding paragraph.

165.    Defendants have wrongfully used Allegiant's proprietary marketing materials, programs, service marks and other proprietary information without Allegiant's consent.

166.    Defendants' foregoing acts resulted in Defendants wrongfully acquiring business without the cost of research and development in order to market and sell products and services in direct competition with Allegiant.

167.    Defendants' actions as described above constitute unfair competition in violation of Oklahoma common law and Allegiant is entitled to monetary damages as a result.

**COUNT XII**
**CIVIL CONSPIRACY**
**(All Defendants)**

168.    Allegiant re-alleges and incorporates by reference the allegations contained in each preceding paragraph.

169.    Upon information and belief, Defendants acted in concert to pursue and commit the unlawful behavior mentioned herein.

170.    As a result, Defendants actions constituted a civil conspiracy under Oklahoma common law and Defendants are jointly and severally liable for the acts done in furtherance of that conspiracy.

**PRAYER FOR RELIEF**

Allegiant requests the Court enter judgment in its favor as follows:

A.    Judgment be entered in favor of Allegiant against Defendants as to each of the above counts;

B.      Defendants, together with their respective officers, members, managers, directors, agents, employees, representatives, and all persons acting in concert with Defendants, be enjoined from engaging in further acts of copyright infringement, trademark infringement, misappropriation, unfair competition, unjust enrichment, and deceptive trade practices;

C.      Allegiant be granted specific performance of the License Agreement and that Direct Innovations, together with its members, managers, officers, directors, agents, employees, representatives, and all persons acting in concert with Direct Innovations, be enjoined from engaging in further acts in breach of the License Agreement;

D.      Allegiant be awarded all of its actual damages caused by Defendants' aforementioned wrongful acts;

E.      Allegiant be awarded statutory damages as allowed by law;

F.      Defendants be ordered to forfeit all ill-gotten profits and gains;

G.      Defendants be ordered to pay all of Allegiant's costs and reasonable attorneys' fees;

H.      Defendants be ordered to pay exemplary damages for their willful and anti-competitive behavior;

I.      Defendants be ordered to pay treble damages for use of counterfeit marks; and

J.      Allegiant be granted all other legal and equitable relief as this Court may deem appropriate and just.

Respectfully submitted this 13th day of January, 2015.

/s/Michael D. McClintock
Michael D. McClintock, OBA #18105
Curtis J. Thomas, OBA #22747
Zachary A.P. Oubre, OBA #30666
McAfee & Taft
A Professional Corporation
10th Floor, 2 Leadership Square
211 North Robinson
Oklahoma City, OK 73102
michael.mcclintock@mcafeetaft.com
curtis.thomas@mcafeetaft.com
zach.oubre@mcafeetaft.com
**ATTORNEYS FOR PLAINTIFF**

**JURY TRIAL DEMANDED**