# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ALLEGIANT MARKETING GROUP, INC., an Oklahoma corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. CIV-15-40-D |
| DIRECT INNOVATIONS, LLC, a Texas limited liability company, STRIKE MARKETING, LLC a Texas limited liability company, McCARTHY COMPANIES, INC., a Texas corporation, and AMBERLY ALLEN, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## **ORDER**

In this action, Allegiant Marketing Group, Inc. (Allegiant) brings a host of complaints against Defendants Direct Innovations, LLC, Strike Marketing, LLC, McCarthy Companies, Inc. and Amberly Allen, alleging Defendants usurped and misappropriated its proprietary and confidential information, namely, its "Mystery Mania" direct mailer program, which offers discount vouchers and price certificates to consumers/potential customers. This matter comes before the Court on (1) Direct Innovations and Allen's Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, Motion to Transfer [Doc. No. 18] and (2) Defendants McCarthy

Companies and Strike Marketing's Motion to Dismiss [Doc. No. 38]. Allegiant has responded to the motions and the matter is now at issue.

## BACKGROUND

This case and its companion, *Weisgarber Investments, Inc., et al. v. Direct Innovations, LLC, et al.*, No. CIV-15-190-D, arise out of a failed business relationship between Allegiant, its related entities, and Defendant Allen and her company, Direct Innovations, LLC. The following facts are taken from the Complaint and the parties' submissions, all of which are viewed in the light most favorable to Allegiant. *AST Sports Science, Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1056 (10th Cir. 2008) (in making determination as to personal jurisdiction, all factual disputes should be construed in favor of the plaintiff).[1]

Allegiant is a full service mail provider. As part of its business, it develops and manages various marketing programs whereby promotional materials are distributed to consumers on behalf of Allegiant's clients. Notable among these marketing programs is "Mystery Mania," a program under which prospective customers receive discount vouchers and prize certificates. Allegiant is the owner of copyrights in the

---

[1] This is a hotly contested action, and the Court is mindful of the parties' respective contentions and arguments on the history of this case, as well as on many of the topics addressed in this order. However, as stated, for purposes of resolving the present jurisdictional issue, all factual disputes must be construed in Allegiant's favor.

"Mystery Mania" program and other proprietary mailers used in connection with it.

Defendant Allen is the founder, president and sole shareholder of Defendant Direct Innovations, LLC, a Texas direct-mail company that provides "turnkey" direct marketing products to car dealers and advertising agencies. Because of Allegiant's prior experience in developing proprietary marketing materials for automobile dealerships, Allen contacted Allegiant about doing business together. Allen first became acquainted with Allegiant through social media contact with Eric Weisgarber, a director and shareholder of Allegiant.

After several discussions, Allegiant and Direct Innovations entered into a "Licensing Agreement for Direct Mail Piece" (the Agreement) under which Allegiant granted Direct Innovations the use of, among other proprietary items, the "Mystery Mania" program. The Agreement contained a forum selection clause, entitled "Recitals," which stated:

> <u>Both parties agree that in the event cause arises to seek court redress, that this agreement will be interpreted and governed by the laws of the State of Oklahoma and that any actions will be brought in the State of Oklahoma.</u> Direct Innovations agrees to pay all reasonable attorney's fees and costs incurred by Allegiant Marketing Group, Inc. to defend Allegiant Marketing Group's copyright under this agreement. In the event that any portion of this agreement and license becomes unenforceable, it shall be severed and all other portions shall remain in effect.

*See* Declaration of Amberly Allen, Ex. 1 [Doc. No. 20] (emphasis added). Allen, on

behalf of Direct Innovations, signed the Agreement. Allen was also given access to a proprietary database, which contained names and contact information of individuals and entities in the automotive industry. The parties subsequently terminated the Agreement in November, 2013.

According to Allegiant, Direct Innovations merged with Strike Marketing and was acquired by McCarthy in 2014. After the acquisition, McCarthy appointed Allen as Director of Sales. Allegiant contends Defendants continued to promote and advertise the "Mystery Mania" program without Allegiant's consent, and despite the Agreement's termination, to unlawfully compete with Allegiant. Allegiant further states Allen has unlawfully maintained possession of Allegiant's proprietary database and continues to use it in connection with her business.

Defendants argue they are not subject to personal jurisdiction in Oklahoma because they have no substantial contacts with Oklahoma and it would be unfairly burdensome to require them to defend against Allegiant's claims in Oklahoma. Allegiant states Direct Innovations and Allen consented to jurisdiction in Oklahoma via the aforementioned forum selection clause and the other defendants, as successor entities, thus waived the right to contest personal jurisdiction in this Court. Allegiant also argues it has established a prima facie showing of personal jurisdiction and the exercise of jurisdiction would not offend traditional notions of fair play and

4

substantial justice.

## STANDARD

The plaintiff bears the burden of establishing personal jurisdiction. *OMI Holdings v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998). This burden is light in the preliminary stages of litigation. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir.1995). When there has been no evidentiary hearing, a plaintiff must only present competent proof in the form of affidavits and other written materials that, if true, would establish a prima facie showing that jurisdiction is proper. *Id*. To defeat such a showing by the plaintiff, a defendant must come forward with a "compelling case" that other considerations render jurisdiction unreasonable. *OMI Holdings*, 149 F.3d at 1091 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)); *Rambo v. American Southern Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir.1988). In the absence of a hearing, the Court accepts a plaintiff's well-pled allegations in a complaint – as opposed to conclusory allegations – as true to the extent they are not controverted by the defendant's affidavits. *Wenz*, 55 F.3d at 1505; *ConocoPhillips Co. v. Jump Oil Co.*, 948 F. Supp. 2d 1272, 1277 (N.D. Okla. 2013). If there is a factual dispute, it is preliminarily resolved in the plaintiff's favor. *AST Sports Science*, 514 F.3d at 1056.

## DISCUSSION

To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show jurisdiction is proper under the laws of the forum state and the exercise of jurisdiction does not offend the Due Process Clause of the Fourteenth Amendment. *Soma Medical Intern. v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999). Oklahoma's long-arm statute, 12 OKLA. STAT. § 2004(F), provides "[a] court of this state may exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States." The long-arm statute is coextensive with the constitutional limitations imposed by the Due Process Clause. *Rambo*, 839 F.2d at 1416. Therefore, if jurisdiction is consistent with the Due Process Clause, Oklahoma's long arm statute authorizes jurisdiction over a nonresident defendant.

Personal jurisdiction may either be general or specific. A court may not exercise general jurisdiction over a nonresident unless the defendant has "continuous and systematic" business contact with the forum state. *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1160 n. 5 (10th Cir. 2010); *Lively v. IJAM, Inc.*, 2005 OK CIV APP 29 ¶ 26, 114 P.3d 487, 494. The Supreme Court recently reiterated this standard in *Daimler AG v. Bauman*, __ U.S. __, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014), wherein it stated general jurisdiction refers to a court's power

to hear claims against a nonresident when its "affiliation with the State are so continuous and systematic' as to render [it] *essentially at home* in the forum state." *Id*. at 751 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. __, __, 131 S.Ct. 2846, 2851, 180 L.Ed.2d 796 (2011)(emphasis added)).

In assessing contacts with a forum for purposes of general jurisdiction, the Tenth Circuit considers such factors as: "(1) whether the corporation solicits business in the State through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation." *Trierweiler v. Croxton and Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir. 1996). The facts cited to support general jurisdiction must be extensive and persuasive. *Lively*, 114 P.3d at 494. If general jurisdiction is found, "all causes of action against the defendant, whether or not related to the defendant's activities in that state, may be pursued in [the forum's] courts." *Id.* (citation omitted).

A specific jurisdiction analysis involves a two-step inquiry. First, a court must consider whether the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there. Second, if the

defendant's actions create sufficient minimum contacts, the court must then consider whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice. *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1065 (10th Cir. 2007); *Boatright Family, LLC v. Reservation Center, Inc.*, No. CIV–13–192–D, 2015 WL 2345299 at *2 (W.D. Okla. May 14, 2015) (citing *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004)). "Minimum contacts must be found as to each defendant over whom the court exercises jurisdiction." *Home–Stake Prod. Co. v. Talon Petroleum, C.A.*, 907 F.2d 1012, 1020 (10th Cir.1990). Such contacts cannot be random, fortuitous or attenuated. *OMI Holdings*, 149 F.3d at 1094. The plaintiff cannot be the only link between the defendant and the forum. *Walden v. Fiore*, __ U.S. __, 134 S.Ct. 1115, 1122, 188 L.Ed.2d 12 (2014). Whether a nonresident's activities in the forum are sufficient to confer personal jurisdiction depends on "the totality of facts." *Premier Corp. v. Newsom*, 620 F.2d 219, 222 (10th Cir. 1980); *Bricktown Resources, Inc. v. KTM Services, Inc.*, No. CIV–08–928–F, 2008 WL 4723012 at *4 (W.D. Okla. Oct. 23, 2008).

The Tenth Circuit has endorsed a three-pronged analysis for use when examining whether a nonresident defendant has sufficient minimum contacts with the forum to satisfy constitutional requirements: (1) the nonresident must do some act or consummate some transaction with the forum or perform some act by which it

8

purposefully avails itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable. *See Rambo*, 839 F.2d at 1419 n. 6.

Despite the foregoing analysis, requirements of personal jurisdiction, like many other rights, may be waived through consent. *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). Specifically, parties to a contract may agree in advance to waive objections to personal jurisdiction in a particular forum through a forum selection clause. *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316, 84 S.Ct. 411, 11 L.Ed.2d 354 (1963); *Williams v. Life Savings and Loan*, 802 F.2d 1200, 1202 (10th Cir. 1986).[2] When parties consent to personal jurisdiction in a certain forum, there is no need to analyze the forum state's long arm statute or the party's contacts with the forum state. *See id*. ("Once waived, lack of personal jurisdiction may not be raised by the court.") (citing *Zelson v. Thomforde*, 412 F.2d 56, 58 (3rd Cir.1969)); *see also Elec. Realty Assocs., L.P. v. Vaughan Real Estate, Inc.*, 897 F.Supp. 521, 523 (D. Kan. 1995).

---

[2]In Oklahoma, forum selection clauses are *per se* enforceable, absent compelling circumstances to the contrary. *Howard Family Charitable Foundation, Inc. v. Trimble*, 2011 OK CIV APP 85, ¶ 44, 259 P.3d 850, 862.

## DIRECT INNOVATIONS / AMBERLY ALLEN

Direct Innovations and Allen contend they are not subject to personal jurisdiction because (1) at all times, Direct Innovations maintained its principal place of business in Houston, Texas; (2) the Licensing Agreement was executed in Houston; (3) other documents related to the parties' relationship were executed by Direct Innovations in Houston; (4) all of the activities under the agreements were performed in Texas; (5) Allen lives in Texas and has never been to Oklahoma; (6) Direct Innovations had one salesperson in Oklahoma, but she completed only one sale of the material covered by the Agreement; (7) Direct Innovations only completed three sales of the material covered by the Agreement; (8) from 2000-2015, Direct Innovations completed only twelve sales to dealerships in Oklahoma, representing less than 1% of its total sales; and (9) it does not sell products through its website so as to direct any such activity towards Oklahoma.

## MCCARTHY COMPANIES

McCarthy states (1) it does not have any offices or employees in Oklahoma; (2) it does not have any agents or salespeople assigned to Oklahoma; (3) it is not authorized to do business in Oklahoma; (4) it does not maintain any bank accounts or other assets or own any property in Oklahoma; (5) it has only one client in Oklahoma for which it has performed (in Texas) only two contracts–one beginning

in February 4, 2010 and one in May 2014; (6) revenues derived from its Oklahoma business only represent 3% of its total revenue for 2014; and (7) it does not knowingly or intentionally direct any of its marketing or advertising efforts to Oklahoma.

### STRIKE MARKETING

Similarly, Strike states (1) it does not have any offices or employees in Oklahoma; (2) it does not have any agents or salespeople assigned to Oklahoma; (3) it is not authorized to do business in Oklahoma; (4) it does not maintain any bank accounts or other assets or own any property in Oklahoma; (5) it has only six (6) Oklahoma companies that subscribe to its nationwide direct mail service and that its only contact with the state is derivative, i.e., it develops content for its Oklahoma customers to utilize and such content is designed and created in Texas, not Oklahoma; and (6) it does not purposefully advertise or solicit business from Oklahoma directly, Oklahoma residents cannot purchase products directly from it, and the percentage of its total revenue for its Oklahoma customers constitutes approximately 5% of its 2014 total revenue.

Allegiant does not necessarily dispute these allegations. Instead, it argues Direct Innovations/Allen consented to jurisdiction in Oklahoma via the aforementioned forum selection clause, and defendants McCarthy and Strike, as

11

successor entities, likewise waived any objection to this Court's exercise of personal jurisdiction. Allegiant also contends that by virtue of the tortious conduct alleged herein, it has stated sufficient facts supporting a finding of personal jurisdiction. Alternatively, Allegiant requests this Court to permit limited jurisdictional discovery.

Viewing the totality of the alleged contacts between Defendants and Oklahoma, the Court finds Defendants' contacts with Oklahoma fall short of what the Supreme Court and Tenth Circuit have deemed sufficient to allow for personal jurisdiction, either general or specific. The facts do not suggest Defendants have a regular presence in Oklahoma. There is no evidence that Defendants have a local office or agents in Oklahoma. There is no evidence that Defendants come to Oklahoma on a regular basis to solicit business. In addition, there is no evidence that Defendants have directed any advertising or marketing specifically at Oklahoma. Although Defendants have occasionally represented Oklahoma clients, they do not hold themselves out as "doing business" in Oklahoma. Moreover, in this regard, the Court concludes the volume of business conducted in Oklahoma is not substantial. The alleged actions are insufficient to support a finding that Defendants either purposefully directed their activities at Oklahoma or have committed acts purposefully availing themselves of the privilege of conducting activities within Oklahoma.

Because Defendants lack minimum contacts with Oklahoma, there is no need to analyze whether the assertion of personal jurisdiction offends traditional notions of fair play and substantial justice.

The Court now turns to Allegiant's waiver argument. Although none of the parties address in detail the nature of the forum selection clause at issue, the Court finds the forum selection clause is *permissive*, rather than mandatory, in nature. "The difference between a mandatory and permissive forum selection clause is that '[m]andatory forum selection clauses contain clear language showing that jurisdiction is appropriate *only* in the designated forum.' " *Blackwell Enterprises, Inc. v. Henkels & McCoy, Inc.*, No. CIV–12–1242–D, 2013 WL 3771290 at *4 (W.D. Okla. July 16, 2013) (quoting *Am. Soda, LLP v. U.S. Filter Wastewater Grp., Inc.*, 428 F.3d 921, 926 (10th Cir. 2005) (emphasis added)). "In contrast, permissive forum selection clauses authorize jurisdiction in a designated forum, but do not prohibit litigation elsewhere." *Id*.

In *K & V Scientific Co. v. BMW*, 314 F.3d 494 (10th Cir. 2002), the Tenth Circuit adopted the majority rule for enforcing forum-selection clauses. Specifically, it concluded that, when venue is specified, such as when the parties designate a particular county or tribunal for litigation, and the designation is accompanied by mandatory or obligatory language, a forum-selection clause will be enforced as

13

mandatory. *Id*. at 499-500.³ "Contractual language designating jurisdiction or choice of law typically does not create a mandatory forum selection clause *unless* the contract also identifies a specific forum in which litigation must be pursued or in which jurisdiction is exclusive." *Blackwell Enterprises, Inc. v. Henkels & McCoy, Inc.*, 2013 WL 3771290 at *4 (W.D. Okla. July 16, 2013) (citing *K–V Scientific*, 314 F.3d at 500) (emphasis in original). If the paragraph is ambiguous – capable of being construed as either permissive or mandatory – the paragraph is deemed to be permissive. *K–V Scientific*, 314 F.3d at 500-01.

Applying these principles, this Court concludes the forum selection clause at issue is permissive. While the clause includes the seemingly mandatory phrase "will," it refers to jurisdiction only generally, and does so in non-exclusive terms in that it does not designate a particular county, district, or tribunal for litigation. Accordingly,

---

³For illustration, the *K & V Scientific* court noted the following clauses, each using the word "shall," were considered permissive: "Any dispute arising between the parties hereunder shall come within the jurisdiction of the competent Greek Courts, specifically of the Thessaloniki Courts"; "The courts of California, County of Orange, shall have jurisdiction over the parties in any action at law relating to the subject matter or the interpretation of this contract"; "This agreement shall be construed and enforceable according to the law of the State of New York and the parties submit to the jurisdiction of the courts of New York"; and "This agreement shall be governed by and construed in accordance with the laws of the Federal Republic of Germany. *** Place of jurisdiction shall be Dresden." *K & V Scientific Co.*, 314 F.3d at 499 (citations omitted). The other two examples of permissive clauses were: "The laws and courts of Zurich are applicable" and "Place of jurisdiction is Sao Paulo/Brazil." *Id*. (citations omitted).

the parties' forum selection clause does not shield the present case from dismissal for lack of personal jurisdiction.

Finally, while the scope of discovery permitted under the Federal Rules is generally quite broad, trial courts are vested with the discretion to permit or deny discovery in aid of jurisdiction. *Harris v. Am. Intern. Group, Inc.*, 923 F. Supp. 2d 1299, 1302 (W.D. Okla. 2013). In light of the foregoing analysis, the Court chooses to exercise its discretion and deny Allegiant's motion requesting jurisdictional discovery.

## CONCLUSION

For the reasons stated herein, the Court finds Defendants lack sufficient contacts with Oklahoma to permit this Court to exercise personal jurisdiction. Accordingly, Defendants Direct Innovations and Allen's Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, Motion to Transfer [Doc. No. 18], and Defendants McCarthy Companies and Strike Marketing's Motion to Dismiss [Doc. No. 38], are **GRANTED**.

IT IS SO ORDERED this 26th day of August, 2015.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE